UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

|  |  |  |
|---|---|---|
| FREEDOM WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No: |
| v. | ) | 5:13-CV/26-Os-22 AAC |
| | ) | |
| THE HONORABLE BARACK OBAMA | ) | |
| President of the United States of America, | ) | |
| THE HONORABLE JOSEPH R. BIDEN, | ) | |
| Vice-President of the United States of America, | ) | |
| OBAMA GUN CONTROL TASK FORCE, | ) | |
| JOHN DOES 1-99 and JANE DOES 1-99, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' MOTION TO DISMISS**

Defendants, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3) and

12(b)(6), respectfully move the Court to dismiss plaintiff's Amended Complaint for lack of

jurisdiction, improper venue, and for failure to state a claim under the Federal Advisory

Committee Act, 5 U.S.C. App. 2 §§ 1-16 and the Freedom of Information Act, 5 U.S.C. §

552. The reasons supporting defendants' motion are set forth in the accompanying

Memorandum of Law in Support of Defendants' Motion to Dismiss.


Date: February 27, 2013                    Respectfully Submitted,

                                          STUART F. DELERY
                                          Principal Deputy Assistant Attorney General

                                          ROBERT E. O'NEILL
                                          United States Attorney

ELIZABETH J. SHAPIRO
Deputy Director, Federal Program Branch

/s/  Daniel Bensing
DANIEL BENSING
Senior Counsel
(D.C. Bar No. 334268)
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W. Room 6114
Washington, D.C.  20530
Tel: (202) 305-0693
Fax:  (202) 616-0683
Email:  Daniel.Bensing@USDOJ.gov

Attorneys for Defendants.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | | |
|---|---|---|
| FREEDOM WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No: |
| v. | ) | 5:13-CV/26-Os-22 AAC |
| | ) | |
| THE HONORABLE BARACK OBAMA | ) | |
| President of the United States of America, | ) | |
| THE HONORABLE JOSEPH R. BIDEN, | ) | |
| Vice-President of the United States of America, | ) | |
| OBAMA GUN CONTROL TASK FORCE, | ) | |
| JOHN DOES 1-99 and JANE DOES 1-99, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

**STATEMENT**

In its Amended Complaint, plaintiff Freedom Watch purports to sue the President

and the Vice President for their efforts to propose sensible measures to reduce gun

violence.  In so doing, and based on nothing but the President's announcement that the

Vice President would hear the concerns of stakeholders, plaintiff alleges the existence of a

purported advisory committee governed by the Federal Advisory Committee Act, 5 U.S.C.

App. 2 ("FACA").   But the open meeting and other requirements of FACA do not apply

whenever the President or Vice President engages with stakeholders on important matters

of public policy.  To the contrary, FACA cannot be applied in such a manner, because to

do so would unconstitutionally interfere with the President and Vice-President's Article II

1

right to confidential communications.  Plaintiff's Amended Complaint fails to allege even the most basic, threshold elements required to state a plausible claim under FACA. Defendants, accordingly, move to dismiss both counts of plaintiff's Amended Complaint ("Compl.") for lack of jurisdiction, improper venue, and failure to state a claim on which relief can be granted.  *See* Fed. R. Civil P. 12(b)(1), (b)(3) and (b)(6).

As an initial matter, venue in this district is improper for both counts. The plaintiff corporation does not have its principal place of business in this district, the relevant events did not occur in this district, and the subject records are not located in this district.  Nor do the defendants reside in this district. Whether viewed through FOIA's unique venue provision, or the general venue statute applicable to civil actions, no basis exists for venue in the Middle District of Florida.

Count I of the Amended Complaint purports to allege a claim under FACA. FACA, however, does not provide a private right of action.  Instead, an action to enforce FACA may only be brought pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 551, *et seq.* ("APA").  Plaintiff has not alleged an APA claim against the President, the Vice President, or the so-called "Obama Gun Control Task Force," nor could it.  Neither the President, the Vice President or the purported task force is an "agency" whose actions are subject to judicial review under the APA.  In any event, the Supreme Court has recognized that, even had Congress provided a private right of action, the application of FACA to the President and Vice President presents formidable constitutional difficulties.

Without a jurisdictional basis on which to sue, Count I must be dismissed.  But even were the court to find jurisdiction (which it should not), Count I should be dismissed

for failure to state a claim.  FACA applies only when a committee is established or utilized to provide collective advice.  Plaintiff's complaint fails to allege facts sufficient to establish that the putative "Obama Gun Control Task Force" exists as an advisory committee within the meaning of FACA.  Indeed, it fails to allege that the so-called task force possesses any of the necessary, formal attributes that would subject it to the requirements of FACA.

Count II of the Amended Complaint, seeking relief under the Freedom of Information Act, 5 U.S.C. § 552, ("FOIA") similarly fails for multiple reasons.  Plaintiff has not submitted a valid FOIA request, and, more fundamentally, even if it had, neither the President nor the Vice President is an agency subject to the FOIA.

Finally, to the extent that the Amended Complaint - not through any cause of action pled but through its "prayer for relief" - can be construed to allege a claim for mandamus pursuant to 28 U.S.C. § 1361, that relief should also be denied.  Mandamus is an extraordinary remedy, rarely granted.  Plaintiff has not come close to demonstrating its entitlement to such drastic relief, particularly as against the President and the Vice President of the United States.  Because both counts of the Amended Complaint are woefully deficient, Rule 12 requires that this case be dismissed in full.

**Plaintiff's Amended Complaint**

In its Amended Complaint, plaintiff Freedom Watch, Inc. claims that President Obama established the so-called "Obama Gun Control Task Force" (designated the "OGCTF" by plaintiff) allegedly to gather information and advise the President on "matters related to possible gun control legislation and the use of executive orders to limit

and infringe gun ownership rights." Compl.¶ 8.  Plaintiff claims that the "OGCTF" is

headed by Vice President Biden, Compl.¶ 4, and held its first meeting on December 20,

2012 "without the required notice requirements having been met being posted in the

Federal Registry [sic]," Compl. ¶ 11.  Plaintiff further asserts that the "national media"

have reported that non-federal employees, including private lobbyists, have "fully

participated" in non-public meetings of the "OGCTF."  Compl.¶ 12.[1]

Having alleged the existence of the so-called "OGCTF," plaintiff, in Count I of the

Amended Complaint, claims that this entity is a federal advisory committee subject to the

requirements of the FACA.  Compl. ¶ 17.  By this lawsuit, plaintiff seeks to compel the

"OGCTF" to comply with FACA.  Specifically, plaintiff requests that its representatives be

allowed to attend and participate in meetings of the "OGCTF," that plaintiff be given

copies of certain "OGCTF" documents, that the "OGCTF" appoint "at least one person

with the different point of view," and comply with all other requirements of FACA.

Compl.¶¶ 17, 18.

In Count II of the Amended Complaint, plaintiff claims that on January 7, 2013, it

delivered a letter to defendants requesting "all minutes and other document and records

produced out of the 'OGCTF.'"  Compl. ¶ 24.  (That letter, which makes no reference to

the FOIA, is Exhibit 1 to plaintiff's Amended Complaint.)  Plaintiff alleges that defendants

---

[1] On December 19, 2012 President Obama announced that Vice President Biden would
lead an effort to develop proposals to address the problem of gun violence.  On January 16,
2013, President Obama announced a series of reforms designed to curb gun violence that
are the result of the effort led by Vice President Biden that was initiated on December 19,
2012.  *See* http://www.whitehouse.gov/blog/2013/01/16/president-obama-announces-new-
measures-prevent-gun-violence. (Last visited February 27, 2013).

have failed to comply with its request, Compl. ¶ 25, that plaintiff has exhausted its

administrative remedies, Compl. ¶ 26 and that plaintiff has a right of access to the

information requested, Compl. ¶ 27.

**Statutory Background**

    **1. Federal Advisory Committee Act**

    Congress enacted FACA in 1972 to reduce the growing cost of unnecessary blue

ribbon commissions, advisory panels, and honorary boards set up by the government to

advise the President and federal agencies. The statute seeks to eliminate committees that

have outgrown their usefulness and impose uniform procedures on those that are

indispensable. *See* 5 U.S.C. App. 2 § 2(b). FACA defines an "advisory committee" as

"any committee, board, commission, council, conference, panel, task force, or other similar

group, or any subcommittee or other subgroup thereof" that is "established" by statute, or

"established or utilized" by the President or by one or more agencies, "in the interest of

obtaining advice or recommendations for the President or one or more agencies or officers

of the Federal Government." Id. § 3(2). Excluded from FACA is "any committee that is

composed wholly of full-time or permanent part time, officers or employees of the Federal

Government." Id. § 3(2)(i). *See generally Public Citizen v. Dep't of Justice*, 491 U.S. 440

(1989).

    FACA imposes an array of procedural requirements on the creation and operation

of advisory committees. An "advisory committee" cannot meet or take any action until a

detailed charter is filed with the head of the agency to which it reports (or the

Administrator of the General Services Administration in the case of a committee reporting

to the President) and with the House and Senate committees having legislative jurisdiction over the agency.  5 U.S.C. App. 2 § 9(c).  Every "advisory committee" must give advance notice in the Federal Register of any meeting, *id*. § 10(a)(2), hold all meetings open to the public, *id*. § 10(a)(1), keep detailed minutes of each meeting and copies of all reports received, issued, or approved by the advisory committee, *id*. § 10(c), and make its records available to the public for inspection and coping at a single location in accordance with the Freedom of Information Act, 5 U.S.C. § 552, 5 U.S.C. App. 2 § 10(b).  Additionally, each such committee must be "fairly balanced in terms of the points of view represented and the functions to be performed," *id*. § 5(b)(2), and "not be inappropriately influenced by the appointing authority or by any special interest," *id*. § 5(b)(3).

### 2.  Freedom of Information Act

The Freedom of Information Act "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003).  Accordingly, the statute requires agencies to release documents responsive to a properly submitted request but also provides nine statutory exemptions to this general disclosure obligation.  *See* 5 U.S.C. §§ 552(a)(3), (b)(1)-(b)(9).  To sustain its burden of justifying nondisclosure of responsive information, *see* 5 U.S.C. § 552(a)(4)(B), the agency must identify the information at issue and the bases for the exemptions claimed. The FOIA applies to any "agency" of the United States, as defined in 5 U.S.C. § 552(f), adopting the APA's definition of agency, 5 U.S.C. § 551(1).

**Standard of Review on a Motion to Dismiss**

Rule 12(b)(3) of the Federal Rules of Civil Procedure provides that a defendant may move to dismiss (without prejudice) a complaint for improper venue.  The facts as alleged in the complaint are taken as true in resolving a venue motion, *DeLong Equip.t Co. v. Wash. Mills Abrasive*, 840 F.2d 843, 845 (11th Cir. 1988), but plaintiff normally bears the burden of establishing that venue is proper, *Bartholomew v. Va. Chiropractors' Ass'n*, 612 F.2d 812 (4th Cir.), *cert. denied*, 446 U.S. 938 (1979); *Belcher-Robinson, L.L.C. v. Linamar Corp.*, 699 F. Supp. 2d 1329, 1333 (M.D.Ala. 2010).  *But see e.g. Darby v. U.S. Dept. of Energy*, 231 F. Supp. 2d 274 (D.D.C. 2002) (holding that the burden is defendant's).

Fed. R. Civ. P. 12(b)(6) provides that a party may move to dismiss a complaint for failure to state a claim on which relief may be granted.  In ruling on a motion to dismiss, a court must accept as true all factual allegations contained in the complaint, and shall construe all inferences in favor of the plaintiff.  *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To withstand a motion to dismiss for failure to state a claim, the complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . .   Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twomby*, 550 U.S. 544, 555 (2007) (footnote

omitted) (citations omitted). The rules of pleading require factual allegations "plausibly suggesting," and "not merely consistent with," the elements of a valid claim for relief. *Id.* at 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, *supra*, 556 U.S. at 678.

Courts have generally relied on Rule 12(b)(6) of the Federal Rules of Civil Procedure in dismissing FOIA lawsuits brought against entities that are not agencies under FOIA. *See, e.g.*, *Citizens for Responsibility & Ethics in Wash. v. Office of Admin.*, 566 F.3d 219, 225 (D.C. Cir. 2009) ("*CREW*"); *Sweetland v. Walters*, 60 F.3d 852, 855 (D.C. Cir. 1995). At least one decision has alternatively suggested that such claims should be dismissed pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction. *See Wang v. Exec. Office of the President*, 2008 U.S. Dist. LEXIS 3662, at *3 (D.D.C. Jan. 18, 2008). Under Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction. *Bischoff v. Osceola Cnty.*, 222 F.3d 874, 878 (11th Cir. 2000).

## ARGUMENT

## I.   THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE VENUE IS IMPROPER IN THIS JUDICIAL DISTRICT

Pursuant to Rule 12(b)(3), the Court should dismiss the Amended Complaint, without prejudice, for improper venue. Plaintiff alleges that venue is proper in this district pursuant to the FOIA's venue provision, 5 U.S.C. § 552(a)(4)(B). Compl. ¶ 2. Under that section, venue is proper in (1) Washington, D.C., or (2) where the complainant resides or has his principal place of business, or (3) where the records are located. Plaintiff, however,

has not brought this case in the District of Columbia, and it fails to meet either of the other prerequisites for venue.  First, any records implicated by this suit are not located in this district, nor has plaintiff alleged that they are.  Second, plaintiff fails to allege that Freedom Watch – the complainant -- has its "principal place of business" in this district.  5 U.S.C. § 552(a)(4)(B).  To the contrary, Freedom Watch alleges merely that "[p]laintiff conducts business and has a presence in Ocala, Florida," Compl. ¶ 3, a statement which on its face fails to satisfy the plain language of section 552(a)(4)(B).[2]  Consequently, plaintiff's FOIA claim (Count II) should be dismissed for improper venue.  *See, e.g., Brehm v. Dept. of Justice Office of Information and Privacy*, 591 F.Supp.2d 772, 773 (E.D. Pa. 2008)(complaint dismissed as plaintiff neither resides nor has principal place of business in the district and disputed records not located in the district).

The FOIA's venue provision only governs Count II of plaintiff's complaint; venue for the FACA claim alleged in Count I is determined by the general venue statute for claims against an officer or employee of the United States acting in his official capacity, 28 U.S.C. § 1391(e).  But the result is the same.  Section 1391(e) authorizes venue where the defendant resides (Washington, D.C.), where "a substantial part of the events or omissions giving rise to the claim occurred" (again, Washington, D.C.) or, finally, where the plaintiff resides (also Washington, D.C., as demonstrated by plaintiff's webpage).  28 U.S.C. § 1391(e)(1).  Thus, just as venue for Count I is improper in this district, Count II, too, should be dismissed pursuant to Rule 12(b)(3), without prejudice, for improper venue.  *See*

---

[2] Freedom Watch's principal place of business (as demonstrated from its webpage, http://www.freedomwatchusa.org/contact) is at 2020 Pennsylvania Ave., NW, Suite 345, Washington, D.C.  Last visited February 27, 2013).

*Olberding v. Illinois Central R. Co.*, 346 U.S. 338, 340 (1953) ("The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction.").[3]

## II.   COUNT I SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

### A.   FACA Does Not Provide For a Private Right of Action

Count I of Plaintiff's Amended Complaint alleges a violation of FACA, but FACA does not provide for a private right of action, and hence this Count must be dismissed.[4]   A statute creates a private right of action only when it "displays an intent to create not just a private right but also a private remedy."  *Alexander v. Sandoval,* 532 U.S. 275, 286 (2001).  "Without [statutory intent], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."  *Id*. at 286-87.  Applying the holding of *Sandoval* to FACA, one court in this Circuit concluded as follows:

> The Court has carefully studied FACA's text and structure and concludes that neither evinces a congressional intent to confer on private litigants a right to enforce that statute's requirements.

---

[3] In another  FACA claim nearly identical to this, Freedom Watch alleges that another imagined committee, the "Obama Health Reform De Facto Advisory Committee" held meetings in violation of FACA.  *See Freedom Watch v. Obama*, 807 F. Supp. 2d 28 (D.D.C. 2011).  That case was properly brought in the District of Columbia.

[4] "[T]he existence of a private right of action . . . goes to the subject matter jurisdiction of the court."  *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1345 (11th Cir. 1997); *Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus. Hygienists, Inc.*, 393 F. Supp. 2d 1362, 1375 n 11 (M.D. Ga. 2005).  To the extent that the Court holds that the absence of a private right of action under FACA is grounds for failure to state a claim upon which relief can be granted,  *see Jackson v. Federal Bureau of Prisons,* 657 F. Supp. 2d 176, 179 (D.D.C. 2009) (Robert, J.) defendants move to dismiss Count I on this basis pursuant to Fed. R. Civ. P. 12(b)(6) as well as (b)(1).

*Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus. Hygienists,* 393 F. Supp. 2d 1362, 1377-78 (M.D. Ga. 2005) ("*IBSA*").  In reaching the identical conclusion, the District Court for the District of Columbia concluded that, "[n]otwithstanding the many previous cases in which courts have implicitly recognized a private right of action pursuant to FACA, in light of the Supreme Court's recent decision in *Alexander v. Sandoval,* this Court has no choice but to hold that FACA creates no private right of action."  *Judicial Watch v. Nat'l Energy Policy Dev. Group,* 219 F. Supp. 2d 20, 33 (D.D.C. 2002).[5] (citation omitted).

Admittedly, some courts, both pre- and post-*Sandoval,* have assumed, without analysis, that FACA contains a private right of action.  *See e.g. Public Citizen, supra*, 491 U.S at 452; *Miccosukee Tribe of Indians of Fla. v. Southern Everglades Restoration Alliance,* 304 F.3d 1076 (11th Cir.. 2002).  The *IBSA* Court recognized that in none of these cases did the courts "squarely face the question of whether a private right of action exists under FACA." *IBSA, supra,* 393 F. Supp. 2d at 1377.  The Court thus concluded that, "[i]n the absence of an express holding to that effect, however, this Court cannot in good conscience ignore what it perceives to be *Sandoval's* obligatory mandate."  *Id.  Accord Judicial Watch, supra,* 219 F. Supp. 2d at 34 ("This Court cannot rely on an implicit

---

[5]  *Judicial Watch* was vacated and remanded on unrelated grounds by the Supreme Court in *Cheney v. U.S. Dist. Court,* 542 U.S. 367 (2004).  The Supreme Court noted that "[t]he [district court] acknowledged FACA does not create a private cause of action.  On this basis, it dismissed respondents' claims against the non-Government defendants."  *Cheney, supra,* 542 U.S. at 374-75.

assumption, even an assumption made by the Supreme Court, when a later Supreme Court decision makes clear that the requisite statutory language is lacking here.").

In the absence of a private right of action, a claim to enforce FACA may only be brought pursuant to the APA. *See Judicial Watch, supra,* 219 F. Supp. 2d at 33-34; *IBSA, supra*, 393 F. Supp. 2d at 1378;  *Colorado Environmental Coalition v. Wenker,* 353 F.3d 1221, 1234-35 (10th Cir. 2004); 78; *Utah Ass'n of Counties v. Bush,* 316 F. Supp. 2d 1172, 1194 (D. Utah 2004).

Not surprisingly, plaintiff has not brought a claim under the APA, since such a claim is not permissible here.  The Supreme Court has held that the President is not an "agency" whose actions are subject to judicial review under the APA.  *Franklin v. Massachusetts,* 505 U.S. 788, 801 (1992).  *See also Dalton v. Specter,* 511 U.S. 462, 469-70 (1994).

The logic of *Franklin* requires the same result for the Vice President and his office. In the *Cheney* litigation, plaintiffs conceded that the Vice President was not an agency, *Judicial Watch*, *supra*, 219 F. Supp. 2d at 35, and the *Cheney* Court acted on that assumption throughout the balance of the litigation, *see e.g. Judicial Watch v. NEPDG*, 233 F. Supp. 2d 16, 17 n.1 (D.D.C. 2002) (in denying interlocutory appeal, Court referred to the Vice President, the energy task force and employees of the Vice President as "non-agency defendants").  *See also Armstrong v. Bush,* 924 F.2d 282, 286 n.2 (D.C. Cir. 1991) (both President and Vice President are only subject to the Presidential Records Act, not the Federal Records Act); *Meyer v. Bush*, 981 F.2d 1288, 1295 (D.C. Cir. 1993) (suggesting that the Vice President cannot be an "agency" under FOIA); *Wilson v. Libby*, 535 F.3d

697, 707 (D.C. Cir. 2008) (Office of the Vice President, like the Office of the President, is not subject to the Privacy Act); *Banks v. Lappin*, 539 F. Supp. 2d 228, 234 (D.D.C. 2008) (Vice President is not an agency for purposes of FOIA or Privacy Act).  Because an APA claim cannot be brought against the President and the Vice President, and FACA itself does not provide for a private right of action, plaintiff's purported FACA claim against the President and Vice President must be dismissed.

Nor can plaintiff maintain an APA claim against the alleged FACA entity.  Indeed, plaintiff has alleged no facts demonstrating that the so-called "Obama Gun Control Task Force" exists as an agency within the meaning of the APA.  As an initial matter, plaintiff fails to allege facts demonstrating that the "OGCTF" exists as a governmental entity, let alone an agency.  Although plaintiff alleges that President Obama "created" the "OGCTF," Compl. ¶ 4, plaintiff does not identify any statute, regulation, executive order, or other authority to support the conclusion that the "OGCTF" is a governmental entity.  *See IBSA*, 393 F. Supp. 2d at 1379-80 (noting that in cases where an entity was found to be an agency under the APA, the entity was first recognized as being a governmental entity; dismissing APA claim against entity where plaintiff failed to allege any federal authority creating entity).  Plaintiff has alleged that the "OGCTF" held at least one meeting, Compl. ¶ 11, and that persons who are not federal employees participated in these meetings, Compl. ¶ 12.  But these allegations also fail to support an inference the "OGCTF" is a government entity.

Next, plaintiff fails to allege any facts showing that the "OGCTF" exists as an agency.  Plaintiff alleges that the "OGCTF" is an "agency" of the United States Government, Compl. ¶ 4, but that is merely a legal conclusion, unsupported by any factual

basis.[6]  To be an agency under the APA, an entity must have "substantial independent authority in the exercise of specific functions."  *Soucie v. David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971).  Specifically, to determine if a component within the EOP is an agency for purposes of the APA, the complaint must allege that it is "independent" of the President and that it has a "separate staff" and an "independent structure."  *See Meyer v. Bush*, 981 F.2d 1288, 1295 – 96 (D.C. Cir. 1993)

There are no factual allegations in the complaint that would support such a characterization of the "OGCTF," an unknown, imagined entity.  Indeed, the complaint contains very few factual allegations about the "OGCTF" at all.  The only facts alleged are that it "was created by President . . . Obama and is headed by Vice President . . . Biden to develop proposals for gun control legislation," Compl. ¶ 4; that it has the information and documents that plaintiff seeks; *id*. ¶¶ 14 – 15, and that non-federal employees have participated in its meetings, *id*. ¶ 12.  These allegations are insufficient to establish that the "OGCTF" is an agency for purpose of the APA.

### B.   Count I Should Be Dismissed Because it Fails to Allege Facts Suggesting  that the So-Called "Obama Gun Control Task Force" Is an Advisory Committee Under FACA.

Plaintiff's Amended Complaint fails to allege facts suggesting that the so-called "OGCTF" exists as an advisory committee within the meaning of FACA.  FACA defines

---

[6] Plaintiff's Amended Complaint alleges that the "OGCTF" is both an agency, Compl. ¶ 4, and an advisory committee, Compl. ¶ 9.  However, the "OGCTF" cannot be both an advisory committee and an agency, as plaintiff claims.  *See Heartwood, Inc. v. U. S. Forest Serv.*, 431 F. Supp. 2d 28, 36 (D.D.C. 2006) (Roberts, J.) ("'An advisory committee cannot have a "double identity" as an agency . . .'") (quoting *Wolfe v. Weinberger,* 403 F. Supp. 238, 242 (D.D.C. 1975)); *Gates v. Schlesinger,* 366 F. Supp. 797, 798-99 (D.D.C. 1973).

an "advisory committee" as:

> Any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof . . . which is
>
> > (A) established by statute or reorganization plan, or
> > (B) established or utilized by the President, or
> > (C) established or utilized by one or more agencies,
>
> in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government, except that such term excludes (i) any committee that is composed wholly of full-time, or permanent part-time officers or employees of the Federal Government. . .

5 U.S.C. App. 2 § 3(2).  In *Public Citizen*, *supra*, 491 U.S. 440, the Supreme Court recognized the "almost unfettered breadth" of this definition, *id*. at 452, n.8, yet admonished that, "although its reach is extensive, we cannot believe that [FACA] was intended to cover every formal or informal consultation between the President or an Executive agency and a group rendering advice."  *Id*. at 453.

### 1. Count I Fails to State a Claim Because it Fails to Allege that the Purported Advisory Committee Was Charged With Rendering Collective Advice

The D.C. Circuit has provided guidance for determining whether a group qualifies as a FACA advisory committee.  The court has held that, "a group is a FACA advisory committee when it is asked to render advice or recommendations, as a group, and not as a collection of individuals . . .   Thus, an important factor in determining the presence of an advisory committee becomes the formality and structure of the group." *Ass'n. of Am. Physicians and Surgeons, Inc. v. Clinton,* 997 F.2d 898, 913-14 (D.C. Cir. 1993) (*AAPS*).  "In order to implicate FACA, the President, or his subordinate, must create an advisory

group that has, in large measure, an organized structure, a fixed membership, and a specific

purpose." *Id*. at 914.  The Court set forth the following continuum to assist the analysis:

> When we examine a particular group or committee to determine whether FACA
> applies, we must bear in mind that a range of variations exist in terms of the
> purpose, structure, and personnel of the group.  Perhaps it is best characterized as
> a continuum.  At one end one can visualize a formal group of a limited number of
> private citizens who are brought together to give publicized advice as a group.
> That model would seem covered by the statute regardless of other fortuities such
> as whether the members as called "consultants."  At the other end of the
> continuum is an unstructured arrangement is which the government seeks advice
> from what is only a collection of individuals who do not significantly interact
> with each other.  That model, we think, does not trigger FACA.

*Id*. at 915.

As noted above, plaintiff has failed to allege any facts about the "OGCTF" that

would establish the requisite formality and structure of an advisory committee subject to

FACA, nor has plaintiff identified any enabling legislation or regulatory or other authority

for the "OCGTF".  The only facts that plaintiff alleges are that it was "created by President

. . .Obama and is headed by Vice President . . . Biden to develop proposals for gun control

legislation."  Compl. ¶ 4.  The complaint, moreover, says nothing about the "OGCTF"'s

membership, other than that it is "headed" by the Vice President and non-federal

employees, including lobbyists, "fully participated in non-public meeting of the 'OGCTF'

and in fact, were members of the 'OGCTF.'"  Compl. ¶ 12.  Notably, there is no allegation

that these federal officials and private lobbyists acted *as a group* to develop collective

advice for the President.  In the absence of such an allegation, the supposed committee

cannot, as a matter of law, be subject to FACA.

If anything, the allegations about special interest and industry groups meeting with

the "OGCTF" suggest that, if such an entity existed, it would fall at the latter end of the

D.C. Circuit's continuum, *i.e.,* "an unstructured arrangement in which the government seeks advice from what is only a collection of individuals who do not significantly interact with each other." *See Citizens for Responsibility and Ethics in Washington v. Leavitt*, 577 F. Supp. 2d 427, 432-33 (D.D.C. 2008) (meetings organized by the HHS with a group of private individuals regarding the Office of Head Start's performance standards were not subject to FACA; alleged group has no formal organizational structure and attendees conveyed their own opinions and did not render collective advice); *Am. Society of Dermatology v. Shalala*, 962 F. Supp. 141, 148 (D.D.C. 1996) (multispecialty physician panels established by Health Care Financing Administration were not subject to FACA; panels has no fixed membership and individual panelists gave their input rather than attempting to reach consensus as a group), *aff'd without op.*, 116 F.3d 941 (D.C. Cir. 1997) (table); *Nader v. Baroody,* 396 F. Supp. 1231, 1234 (D.D.C. 1975) (meetings between an Assistant to the President and various Executive Branch official and special interest groups, held for the purposes of exchanging views, did not constitute as advisory committee under FACA; alleged committees "were not formally organized and there is little or no continuity").  Because Count I fails to allege that the alleged advisory committee was charged with rendering collective advice, it must be dismissed for failure to state a claim.

      **2.  Count I Fails to State a Claim Because it Fails to Allege that the Committee Included Non-Government Members With Voting or Veto Power**

Count I cannot be saved by plaintiff's attempt to label the so-called "OGCTF" a "de facto" advisory committee.  Compl. ¶ 9.  As an initial matter, such a label is a legal

conclusion which, of course, the Court is not required to accept as true.  *Iqbal*, *supra*, 556 U.S. at 678.  Even setting aside the legal conclusion, however, there is no longer such a thing as a "de facto" advisory committee where the President and Vice President are concerned, and the underlying facts that plaintiff alleges do not support a conclusion that the alleged committee in question – even if it existed – includes non-governmental members.  Without such non-governmental members, an advisory committee is not subject to FACA.  5 U.S.C. App. 2 § 3(2)(iii).

Plaintiff apparently considers the alleged "OGCTF" a "de facto" advisory committee by virtue of the fact that non-federal employees allegedly attended and participated in meetings "as if they were members of the 'OGCTF,'"  Compl. ¶ 12.  But the fact that a non-government employee participates in a meeting with government employees does not make that meeting subject to FACA, "de facto" or otherwise; it still has to have the "organized structure, [] fixed membership, and [] specific purpose" of an advisory committee.  *AAPS*, *supra*, 997 F.2d at 914.  Here, plaintiff has not alleged facts to establish that these non-government employees were members of the alleged "OGCTF," – an allegation necessary to defeat the "all government employee" exception under FACA – and an allegation of "de facto" membership is legally insufficient.

The *In Re Cheney* litigation, involving a FACA challenge to the 2001 energy task force overseen by Vice President Richard Cheney, specifically rejected plaintiff's "de facto" membership theory.  After the district court denied the government's motion to dismiss in part, and allowed discovery to go forward, *Judicial Watch*, *supra*, 219 F. Supp. 2d at 56, the government sought mandamus relief in the Court of Appeals pursuant to 28

U.S.C. § 1651.  The Court of Appeals rejected the government's mandamus petition, *In Re Cheney*, 334 F.3d 1096 (D.C. Cir. 2003) (*Cheney I*), but the Supreme Court reversed.  In remanding the case back to the D.C. Circuit, the Supreme Court held that the Court of Appeals had failed to consider the important separation of powers concerns implicated by discovery directed to the Office of the Vice President.  *Cheney v. U. S. Dist. Court*, 542 U.S. 367, 381-82 (2004).  On remand, *In Re Cheney*, 406 F.3d 723 (D.C. Cir. 2005) (*Cheney II*), the unanimous *en banc* D.C. Circuit reconsidered and rejected the "de facto membership" doctrine that had previously been accepted by that Circuit.  Under that now discredited doctrine, an otherwise FACA-exempt meeting of full time government employees was subject to FACA if a non-federal official "regularly attends and fully participates in . . . meetings as if he were a member . . ." *AAPS*, *supra*, 997 F.2d at 915.  In *Cheney II*, the Court of Appeals concluded that, "[i]n light of the severe separation of powers problems in applying FACA [to] a committee in the Executive Office of the President, [the court] must construe the statute strictly."  *Cheney II*, *supra*, 406 F.3d at 728.  The Court then rejected the de facto member doctrine where President and Vice President were involved:

> We therefore hold that such a committee is composed wholly of federal officials if the President has given no one other than a federal official a <u>vote</u> in or, if the committee acts by consensus, a <u>veto</u> over the committee's decisions.

*Id*. (emphasis added).

The "de facto member" theory is apparently the sole basis for plaintiff's complaint here.  *See* Compl. ¶ 12 (". . . non-federal employees, including lobbyists . . . fully participated in non-public meetings of the OGCTF and, in fact, were members of the

OGCTF").  By merely pleading "participat[ion]" in the "OGCTF" by non-federal officials,

Compl. ¶ 12, and not alleging that they possessed a formal right to vote on, or veto, its

recommendations (assuming those recommendations were the product of collective advice,

a fact not alleged here), Count I of plaintiff's complaint is insufficient on its face to allege

the existence of an advisory committee that includes non-federal members under *Cheney*

II.[7]  Thus, Count I fails to state a claim under FACA  and should be dismissed

### C.       Application of FACA to the President, the Vice President or the "Obama Gun Control Task Force" Would Be Unconstitutional

Although the Court need not reach this issue given the strength of the arguments

outlined above, applying FACA to the President or the putative "OGCTF" would be

unconstitutional, providing an additional, powerful reason for dismissing Count I.

The Supreme Court has recognized that applying FACA to meetings between

Presidential advisors and private citizens "present[s] formidable constitutional difficulties."

*Public Citizen*, *supra*, 491 U.S. at 466.  Similarly, in *AAPS*, *supra*, 997 F.2d at 908-10, the

D.C. Circuit found that applying FACA and its disclosure requirements to a task force set

up by the President to solicit advice from private citizens intermixed, or not, with

government officials, on an issue of utmost concern to his Presidency – in that case, health

care reform – would seriously burden the President's Article II right to confidential

communications.  *See also Cheney II, supra,* 406 F.3d 728 ("In making decisions . . . the

---

[7] Plaintiff's attempt to bring this case in the Middle District of Florida, rather than in the District of Columbia, where venue properly lies, may be an effort to avoid *Cheney* II's rejection of the de facto membership doctrine.  Given the Supreme Court's admonitions in that case, however, the en banc D.C. Circuit's decision should be viewed as highly persuasive, if not binding, for district courts nationwide.

President must be free to seek confidential information from many sources both inside the government and outside."); *Nader*, *supra,* 396 F. Supp. at 1234 ("To hold that Congress intended to subject meetings of this kind to press scrutiny and public participation with advance notice on formulated agendas, etc., as required by [FACA], would raise the most serious questions under our tripartite form of government as to the congressional power to restrict the effective discharge of the President's business.").  The *AAPS* Court also recognized that FACA's requirement that an advisory committee must be fairly balanced in terms of the views represented would, if applied to groups of presidential advisors, significantly restrict the President's ability to seek advice from whom he chooses.  997 F.2d at 909.

As in *AAPS*, applying FACA to President Obama's attempts to solicit input and advice from private citizens and government officials on the important issue of gun violence would unconstitutionally interfere with his right under Article II to receive confidential advice in the performance of his duties.  Accordingly, even if FACA provided a private right of action, and even if plaintiff could bring suit under the APA, and even if plaintiff's Amended Complaint had alleged the existence of a FACA committee -- Count I must still be dismissed for failure to state a claim.

**III.    THIS COURT LACKS JURISDICTION OVER COUNT II BECAUSE NO FOIA REQUEST IS AT ISSUE AND, IN ANY EVENT, THE PRESIDENT AND VICE PRESIDENT ARE NOT SUBJECT TO FOIA**

**A.    Plaintiff Has Not Submitted a Proper FOIA Request**

Plaintiff's letter of January 7, 2013, addressed to President Obama is captioned "Re: The Federal Advisory Committee Act & The Gun Control Task Force Advisory

Committee." Exhibit 1 to Amended Complaint at 1. After recounting some background about the alleged task force, the fourth paragraph of the letter states: "In accordance with FACA, Freedom Watch and I demand access to all subsequent task force meetings as well as copies of all minutes and records . . ." *Id*. The letter then threatens a lawsuit "to enforce FACA's provisions" if that demand is not met. The FOIA is not mentioned once in the letter. Plaintiff's Amended Complaint is consistent with the text of the letter, stating that it "served a letter to (sic) President Obama, pursuant to the provisions the FACA (sic) . . ." Compl. ¶ 13.

A letter that specifically seeks relief pursuant to FACA should not be construed as a FOIA request. *See* 5 U.S.C § 552(a)(3)(A) (requiring reasonable description of records); *Pickering-George v. Bureau of Alcohol, Tobacco, Fireman and Explosives*, 2008 WL 501375 (D.D.C. Feb. 22, 2008)("although the case was filed as a FOIA action, the subject of the complaint . . . is not a FOIA request. The Court therefore lacks subject matter jurisdiction under the FOIA"); *Scaife  v. IRS*, 2003 WL 23112791 (D.D.C. Nov. 20, 2003) ("a Form 8821 is a taxpayer request for information, not a FOIA request document"). Accordingly, Count II of the complaint should be dismissed for lack of subject matter jurisdiction.

### B.      Even if Plaintiff's Letter Is Construed as a FOIA Request, the President Is Not An Agency Subject to FOIA

By its express language, FOIA's jurisdictional grant provides federal courts with jurisdiction only over an agency's decision to withhold requested documents. 5 U.S.C. § 552(a)(4)(B); *CREW, supra*, 566 F.3d at 222 ("By its terms, FOIA applies only to an 'agency[.]'"). In *Kissinger v. Reporters Comm. For Freedom of the Press*, 445 U.S. 136,

156 (1980), the Supreme Court held that the definition of "agency," codified under FOIA

and adopted from the APA, does not included the White House Office.[8]  Thus, plaintiff has

failed to state a FOIA claim against the President.

> The FOIA defines agency as:
>
> any executive department, military department, Government corporation,
> Government controlled corporation, or other establishment in the executive Branch
> of the Government (including the Executive Office of the President), or any
> independent regulatory agency.

5 U.S.C. § 552(f)(1).  Congress explained when it adopted this definition that its purpose

was to codify the result in *Soucie v. David*, *supra*, 448 F.2d 1067, which held that the term

"agency" under the Administrative Procedure Act does not include units within EOP

whose "sole function [is] to advise and assist the President." *Id*. at 1074.  *See also*

*Franklin*, *supra*, 505 U.S. at 801 (APA's definition of "agency" does not include the

President).

> Likewise, for purposes of defining "agency" under the FOIA, Congress stated that

EOP does not include "the President's immediate personal staff or units in the Executive

Office whose sole function is to advise and assist the President."  H.R. Rep. No. 1380, 93d

Cong., 2d Sess. 14-15 (1974); S. Rep. No. 1200, 93d Cong., 2d Sess. 15 (1974), reprinted

in 1974 U.S. Code Cong. & Admin. News 6267, 6285.  Thus, as *Kissinger* held,

> [t]he legislative history is unambiguous . . . in explaining that the "Executive
> Office" does not included the Office of the President [and] . . . that "the
> President's immediate personal staff or units in the Executive Office whose
> sole function is to advise and assist the President" are not included within the

---

[8] The White House webpage (http://www.whitehouse.gov/administration/eop) (Last visited
February 27, 2013) lists those components within the Executive Office of the President
that constitute the White House Office.

term "agency" under the FOIA.

445 U.S. at 156 (citation omitted).

Since *Soucie* and *Kissinger*, courts have regularly held that components of the White House Office and other offices within the EOP that advise and assist the President are not agencies subject to FOIA. *See, e.g*., *Meyer v. Bush*, *supra*, 981 F.2d at 1292 (President's personal staff and units in the EOP that advise and assist the President are not agencies subject to FOIA); *Nat'l Sec. Archive v. Archivist of the United States*, 909 F.2d 541, 545 (D.C. Cir. 1990) (White House Counsel's Office not an agency subject to FOIA); *Armstrong v. EOP*, 90 F.3d 553, 565 (D.C. Cir.1996) (National Security Council, a unit within the EOP, not an agency under FOIA); *CREW*, *supra* (White House Office of Administration not an agency subject to FOIA). Indeed, in the C*heney* litigation, the plaintiffs conceded early in proceedings that the Vice President was not an agency for purposes of the APA. *Judicial Watch, supra,* 219 F. Supp. 2d at 35.

Here, plaintiff delivered a letter – described in the complaint as a FOIA request — to the 'Hon. Barack Obama, President of the United States." Exhibit 1 to Amended Complaint. Neither the President, *see Franklin, supra*, nor his immediate staff and advisors, *Kissinger, supra,* are agencies subject to the FOIA. Accordingly, plaintiff fails to state a claim under FOIA, and Count II of the Complaint must therefore be dismissed.

## IV.    THE COURT LACKS JURISDICTION UNDER THE MANDAMUS STATUTE EVEN IF THE COMPLAINT WERE CONSTRUED TO PLEAD MANDAMUS RELIEF

Plaintiff's Amended Complaint does not specifically plead a claim for mandamus relief under 28 U.S.C. §1361. However, paragraph II of the Amended Complaint's prayer

for relief asks that, "pursuant to 28 U.S.C. §1361 and other applicable laws, a writ of mandamus issue compelling Defendant OGCTF to comply with the FACA."  Compl. p. 6. Even if the Court were to construe plaintiffs "prayer" to state a claim for mandamus relief, plaintiff has not alleged sufficient facts to justify the extraordinary remedy of mandamus.

The D.C. Circuit cogently summarized the demanding nature of the mandamus standard in *Cheney II*:

> Jurisdiction over actions "in the nature of mandamus" under [28 U.S.C.]§1361 . . . is strictly confined. . .  [M]andamus is "drastic"; it is available only in "extraordinary situations"; it is hardly ever granted; those invoking the court's mandamus jurisdiction must have a "clear and indisputable" right to relief; and even if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary.

*Cheney II*, *supra*, 406 F.3d at 729 *quoting Cheney I*, *supra* 334 F.3d at 1101-02.  *See also Cheney v. U.S. Dist. Court, supra*, 542 U.S. at 390-91; *Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003). Mandamus under section 1361 will only issue to compel the performance of "a clear nondiscretionary duty."  *Heckler v. Ringer*, 466 U.S. 602, 606 (1984); *Lifestar Ambulance Services, Inc. v. U.S.*, 365 F.3d 1293, 1295 (11th Cir. 2004).  It is for this reason that the availability of the "drastic" remedy of mandamus requires an analysis by the court that "merges with the merits" of the case.  *Cheney II*, *supra*, 406 F.3d at 729.

Plaintiff has alleged no more than that the President directed the Vice President and other unidentified federal officials to meet with outside stakeholders on policy matters, and that these meetings constituted a "de facto" advisory committee.  Those bare allegations – which themselves fail to state a FACA claim, as explained above - cannot establish that defendants had a "clear, nondiscretionary duty" to comply with FACA.  Indeed, were this

25

complaint not dismissed, plaintiff's allegations would set the lowest of thresholds for putting the President to the burden of litigation, one that litigants would routinely meet, thus turning on its head the *Cheney* II admonition that mandamus should be "hardly ever [be] granted."

To proceed under a mandamus theory on the basis of this complaint would have grave consequences for the operation of the Executive Branch, which frequently and appropriately meets with various constituents, stakeholders, and advocates who are affected by or seek to shape federal policies and programs.  *See*, *AAPS*, *supra*, 997 F.2d at 908-09 (D.C. Cir. 1993) (discussing "kitchen cabinets").  These beneficial and dynamic interactions with the American public, state or local officials, or even foreign governments would be greatly chilled if all that was required to impose the burden of litigation and discovery on the government was a complaint that stated that such meetings occurred, coupled with unsupported, conclusory allegations that the meetings constituted a "de facto" federal advisory committee.[9]

An additional factor that makes this case a particularly poor candidate for the discretionary exercise of mandamus jurisdiction is that it is against the President.  In the *Cheney* litigation, the Supreme Court criticized the lower courts for failing to consider, in their consideration of mandamus jurisdiction, whether the wide-ranging discovery ordered

---

[9] This risk is heightened by the possibility (and past history) of meritless lawsuits becoming sensationalized vehicles for burdensome discovery that distracts officials from their public responsibilities.  *See, e.g., Alexander v. F.B.I.*, 691 F. Supp. 2d 182, 197 (D.D.C. 2010) ("After years of litigation, endless depositions, the fictionalized portrayal of this lawsuit and its litigants on television, and innumerable histrionics, this Court is left to conclude that with this lawsuit, to quote Gertrude Stein, 'there's no there there.'")

against the Vice President "constituted an unwarranted impairment of another branch in the performance of its constitutional duties." *Cheney v. U.S. Dist. Court*, *supra*, 542 U.S. at 390-91. *See also Public Citizen*, 491 U.S. at 466 (recognizing that applying FACA to meetings between Presidential advisors and private citizens "present[s] formidable constitutional difficulties"); *AAPS*, 997 F.2d at 908-10 (finding that applying FACA and its disclosure requirements to a task force set up by the President to solicit advice from private citizens intermixed, or not, with government officials, on an issue of utmost concern to his Presidency would seriously burden the President's Article II right to confidential communications).

Here, plaintiff has sued the President himself, as well as the Vice President, and has alleged the "OGCTF's" "operational proximity" to the President. *AAPS*, 997 F.2d at 909. *See* Compl. ¶ 4. "It is well established that 'a President's communications and activities encompass a vastly wider range of sensitive material than would be true of any ordinary individual.'" *Cheney v. U.S. Dist. Court*, *supra*, 542 U.S. at 381 *quoting United States v. Nixon*, 418 U.S. 683, 715 (1974). As the Supreme Court explained in *Cheney*, this does not mean that the President is above the law. The point is, rather, that, "the public interest requires that a coequal branch of Government afford Presidential confidentiality the greatest protection consistent with the fair administration of justice, and give recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties." *Id*. at 382 (internal quotations omitted). The Supreme Court concluded that "[t]hese separation-of-

powers considerations should inform a court of appeals [or district court's] evaluation of a mandamus petition involving the President or the Vice President." *Id*.

Moreover, the "de facto" nature of this alleged committee - *i.e.*, the lack of any non-speculative allegation that an actual committee exists - makes this case highly unusual were plaintiff's FACA claim permitted to proceed under a mandamus theory.  Although courts have (improperly) invoked mandamus jurisdiction in some FACA cases, those cases typically involved an established, defined advisory committee that clearly existed. Whether it was an advisory committee subject to FACA was another question, but the existence of the group itself was known, firmly alleged, and not debatable.

For example, the National Energy Policy Development Group ("NEPDG") at issue in the *Cheney* litigation was established by presidential memorandum.  The memorandum housed the NEPDG within the Executive Office of the President, expressly delineated its mission and functions, tasked the Vice President with leading it and establishing subgroups, gave it a limited duration, and appointed certain federal officials as members. *Judicial Watch Inc,. supra*, 219 F. Supp. 2d  at 24.  The allegation in Judicial Watch's complaint was that the NEPDG was an advisory committee subject to FACA because non-federal employees regularly participated in it, making them de facto members.  *See*, 5 U.S.C. App. 2 § 3(2) (exempting from FACA groups composed wholly of federal employees), but there was never any question that the NEPDG, as an identifiable, established group, did, in fact, exist.

Similarly, *Judicial Watch, Inc. v. Dep't of Commerce*, 736 F. Supp. 2d 24 (D.D.C. 2010), involved whether the North American Competitiveness Council ("NACC") was an

advisory committee subject to FACA.  The NACC was an official, tri-national working group of the Security and Prosperity Partnership of North America – an agreement between the leaders of the United States, Canada, and Mexico to work towards a more integrated North American economy and security region.  The complaint included detailed allegations about its structure, membership, and purpose.  *See, e.g.*, *Judicial Watch, supra,* 736 F. Supp. 2d at 27.  And in *Ctr. for Arms Control and Nonproliferation v. Pray*, 531 F.3d 836, 837 (D.C. Cir. 2008), the alleged advisory committee, the Commission on Intelligence Capabilities of the United States Regarding Weapons of Mass Destruction, was established by Executive Order, which gave the commission a defined purpose and directed it to submit a report on its findings and recommendations.[10]

In the instant case, the very fact that plaintiff sued the President and Vice President and seeks to inquire into the President's receipt of advice and recommendations on a major policy initiative necessarily implicates the separation of powers.  These separation of powers concerns strongly counsel against allowing this case to proceed under the guise of mandamus.

## CONCLUSION

For the reasons stated above, plaintiff's Amended Complaint should be dismissed without prejudice for improper venue, or, in the alternative, dismissed with prejudice for lack of subject matter jurisdiction and failure to state a claim.

---

[10] Established groups were also at issue in cases that proceeded directly under FACA, as opposed to the mandamus statute. *See, e.g.*, *Public Citizen*, *supra,* 491, U.S. at 447 (involving the American Bar Association's Standing Committee on Federal Judiciary); *AAPS*, *supra*, 997 F.2d at 900-01 (involving President Clinton's Task Force on National Health Care Reform).

Date:  February 27, 2013                    Respectfully Submitted,

                                            STUART F. DELERY
                                            Principal Deputy Assistant Attorney General

                                            ROBERT E. O'NEILL
                                            United States Attorney

                                            ELIZABETH J. SHAPIRO
                                            Deputy Director, Federal Program Branch

                                            /s/  Daniel Bensing
                                            DANIEL BENSING (Trial Counsel)
                                            Senior Counsel
                                            (D.C. Bar No. 334268)
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Ave., N.W. Room 6114
                                            Washington, D.C.  20530
                                            Tel: (202) 305-0693
                                            Fax:  (202) 616-0683
                                            Email:  Daniel.Bensing@USDOJ.gov

                                            Attorneys for Defendants

CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2013 I electronically filed the foregoing Motion to Dismiss and supporting Memorandum with the Clerk of the Court by using the CM/ECF system.


/s/ *Daniel Bensing*
DANIEL BENSING